## OHIO CASUALTY INSURANCE COMPANY v. HALL
### Case No. CL 87-4479 AG
Fifteenth Judicial Circuit, Palm Beach County

September 21, 1988

### APPEARANCES OF COUNSEL

**James R. Brown,** for plaintiff/Ohio Casualty.

**Walter C. Jones, IV,** for defendant/Hall.

### OPINION OF THE COURT

STEPHEN A. RAPP, Circuit Judge.

### *FINAL JUDGMENT*

The Plaintiff, Ohio Casualty Insurance Company, brought this action for declaratory relief naming Robert and Linda Hall the Defendants. The Halls counterclaimed for declaratory relief.

Hall and Ohio had differences concerning the availability of UM coverage under Hall's policy. Hall was injured in an accident with

Sullivan. Thereafter Hall settled her claim against Sullivan and released Sullivan, allegedly without the permission of Ohio. This, according to Ohio, was a breach of the insurance contract and forfeited the right of Halls to UM coverage. Both Ohio and Hall requested a jury trial. The Halls alleged a variety of legal conclusions under the caption of affirmative defenses in response to the complaint of Ohio. These allegations were simply denied by Ohio.

In addition, Halls counterclaim for declaratory and injunctive relief requesting that the Court determine that UM coverage is available and to order Ohio to arbitrate pursuant to the policy. Hall requested a jury trial for these claims as well.

Neither Ohio or Hall submitted jury instructions to the Court which correctly stated the law or were sufficient to enable the jury to possibly decipher these claims. The Court determined that two issues, in this largely equitable claim, could be submitted to the jury and that the rest ought to be decided by the Court. The jury was asked to determine two key facts which were in controversy:

(1.) Whether Ohio gave Hall permission to settle and

(2.) Whether Ohio's subrogation rights were prejudiced as a result of the settlement between Hall and Sullivan. In other words, did Sullivan have anything worth suing for anyway. The jury answered the first question in the negative and the second question in the affirmative.

Based on the jury verdict and the evidence presented at trial, the Court makes the following findings of fact:

1. Hall purchased UM coverage from Ohio. With the stacking permitted there was $100,000 in benefits available to Hall. The policy provided that, "such persons (Halls) shall do nothing after loss to prejudice such rights." This phrase is used in reference to Ohio's subrogation rights (see Exhibit 1).

2. The jury has informed us that Ohio lost subrogation rights which were not inconsequential.

3. In late November 1986, Hall released the tortfeasor Sullivan and in early December 1986, the case of Hall v. Sullivan was dismissed with prejudice by Mr. Rainey, Hall's attorney. This was done without the expressed permission of Ohio.

4. The evidence reveals that the following communications took place between Ohio and its insured, principally by means of communications between Mr. Rainey, attorney for Halls, and several adjusters

who replaced one another for Ohio. These facts were not contested or were uncontroverted (a-g).

a. In September 1985, Hall's attorney, Mr. Rainey, notified Ohio that he represented Hall regarding the accident.

b. In November 1985, Ohio notified Rainey of coverages available for Hall.

c. In January 1986, correspondence between the parties ensued regarding medical payments, nofault benefits, etc.

d. In March 1986, Mr. Rainey informed Ohio of his UM claim in light of the serious injuries and in light of the tortfeasor Sullivan's $15,000 limits. Rainey also informed Ohio that Sullivan's insurance company, State Farm, will tender its limits, *"however, I will not allow my client to execute any releases as to the negligent tortfeasor without your company's approval."* Mr. Rainey then specifically requests Ohio to conduct an investigation of Sullivan to determine whether or not Ohio would be prejudiced by such a release. Then Mr. Rainey demanded the limits of the UM coverage which he thought at that time were $50,000. At trial Ohio admitted that the limits of coverage were $100,000.

e. In March of 1985, the Ohio adjuster handling the claim, about to leave the employment of Ohio, recommended in his report that Hall was at fault and that an asset check be done on the Sullivans and recommended that no settlement be entered into with Hall at this time.

f. In March of 1986, the asset check received reflected that Sullivans are considered to be "in good financial condition." In April of 1986, Ohio wrote Rainey requesting an Independent Medical Examination of Hall be done prior to a determination on the UM claim.

g. Between April and November of 1986, Mr. Rainey and Ohio had numerous phone conversations regarding Mr. and Mrs. Hall's UM claim. During these conversations, Mr. Rainey became under the impression that he was given permission to settle the claim with Sullivan. On November 10, 1986, Rainey wrote State Farm confirming his settlement with Sullivan and copied Ohio requesting that State Farm encourage Sullivan to cooperate with Ohio to expedite the processing of the UM claim.

The only purpose of this letter having been sent to Ohio was to encourage Ohio to complete their investigation of Sullivan's financial status so that they could make a decision as to whether to waive the

78

subrogation rights and permit their insured, Hall, to accept the $15,000 limits from Sullivan in exchange for a release. In November and December 1986, and January 1987, Mr. Rainey continued to write Ohio and press for settlement and provide medical information and other information relative to the claim.

Ohio continually requested medical information and other information throughout January, February, and March of 1987, as though it was evaluating the claim of Hall. In April of 1987, Ohio announced that Hall had forfeited his UM benefits by settling with Sullivan without Ohio's permission, causing Ohio to lose important subrogation rights. Thereafter, Ohio's interest in evaluating the extent of Hall's injuries ceased.

Based on the above facts, the Court concludes that Ohio knew, or should have known, that their insured was under the impression that Ohio had given its permission to settle with Sullivan. Ohio knew Hall was about to settle with Sullivan and give a release to Sullivan which would, if done without Ohio's permission, cause their insured to lose UM benefits. These benefits were sold to Hall by Ohio and paid for by Hall. Under these circumstances, Ohio had a duty to inform Hall in November of 1986 that its investigation revealed that Sullivan had assets and that it was not waiving its subrogation rights. Clearly, had Ohio done this, Mr. Rainey would have joined Ohio in his suit against Sullivan, as permitted by the applicable statute.

The evidence does not reveal that Ohio deliberately misled and sandbagged its insured. Nevertheless, this was the result of confusion, caused mostly by the change in adjusters who were handling this file. Under these circumstances, Ohio is estopped from claiming Hall has waived his UM benefits by failing to cooperate with Ohio and/or by settling the case with Sullivan without their permission.

If Ohio and Hall were simply arm's length adversaries, estoppel would not lie under these circumstances. But an insurer cannot remain silent when its insured has informed the company that it is about to take action which will permit the company to deny coverage when the company knows or should know that the insured is unaware of this danger or consequence. After all, Hall paid for Under-insured Motorist coverage for just such a situation as exists here.

Wherefore, it is

ORDERED, ADJUDGED and DECREED that:

1. The uninsured motorist coverage is applicable to the claim asserted by Linda Hall. (see prayer for relief in Plaintiffs' complaint)

**79**

2. That the UM coverage provided is in the amount of $100,000. (see prayer for relief in counterclaim)

3. That the Counterplaintiffs are entitled to arbitrate their claim and that the parties are hereby directed to submit to arbitration pursuant to the terms of the insurance policy. (see prayer for relief in counterclaim)

4. The Court retains jurisdiction for consideration of and application for fees and costs.

DONE AND ORDERED at West Palm Beach, Palm Beach County, Florida, this 21st day of September, 1988.